WALDSTEIN *v.* BARNETT.

## Opinion delivered March 16, 1914.

1. GUARDIAN AND WARD—PROPERTY OF WARD—PURCHASE BY GUARDIAN—
   BONA FIDES.—When a guardian purchases property from his ward,
   he must clear the transaction of every shadow of suspicion, and
   unless there is a fair consideration, no fraud, no concealment, and
   no advantage taken by the guardian of information acquired by
   him, in the character of guardian, he will hold the property as a
   constructive trustee, and the sale will be set aside. (Page 143.)

2. GUARDIAN AND WARD—FRAUDULENT PURCHASE OF WARD'S PROPERTY—
   RENTS.—A guardian who fraudulently purchased his ward's home-
   stead property is accountable to the ward for the rents derived
   from the property while in his possession. (Page 144.)

3. GUARDIAN AND WARD—WARD'S PROPERTY—PURCHASE BY GUARDIAN—
   RESALE—INTEREST.—Where a guardian fraudulently purchased the
   homestead from his ward, and sold the same to a third party, in
   an action by the ward to recover from the guardian the proceeds
   of the sale, the ward is entitled to recover the same and also to
   recover interest on the consideration received from the sale for
   the period of time during which the ward would have been entitled
   to the use and possession of the property as a homestead. (Page
   144.)

Appeal from Garland Chancery Court; *Jethro P. Henderson,* Chancellor; modified and affirmed.

### STATEMENT BY THE COURT.

Appellees sued to recover a certain lot situated in the city of Hot Springs, and for an accounting for the rents thereon. They alleged that at the time of their mother's death said property was occupied as a home-stead and at her death descended to her children, the plaintiffs herein, and their brothers and sisters in equal shares, subject, however, to the right of those who were minors to occupy said property under the homestead laws. That at their mother's death the defendant Wald-stein and his wife, who is their sister, had charge of the persons and property of the plaintiffs, and appellant became their guardian. It was alleged that appellant concealed from appellees their homestead rights and fraudulently misrepresented its value to them, and

caused them to have their disabilities removed, and purchased their interest in the lot at a grossly inadequate price. A part of the lot in question had been sold by appellant to one Kittleberger, and there was no prayer to have this sale set aside; but appellees asked that they be given their proper share of the consideration received upon said sale.

Appellant denied that he had practiced any fraud upon appellees in procuring the removal of their disabilities and the execution of the deed from them, and denied there was any inadequacy of consideration, but stated the fact to be that he bought appellees' interest at their request and paid them the fair market value for the lot. The court found that fraud had been practiced in procuring the sale and ordered it set aside, except as to the part reconveyed to Kittleberger, and ordered an accounting between the parties. Other facts will be stated in the opinion.

*Martin & Wooten* and *Robert Martin,* for appellant.

1. Appellant had a right to buy, and no fraud, deceit nor misrepresentation is shown. The consideration was fair. 9 Manitoba L. Rep. 280; 14 A. & E. Enc. 3, 4, 63, 86.

2. The master erred in stating the account.

*A. J. Murphy,* for appellees.

1. Appellant could not buy. Kirby's Dig., § 3797. It is contrary to public policy. 54 Ark. 627; 95 *Id.* 434; 96 *Id.* 573.

2. The purchase was void for undue influence. 2 Pom., Eq. Jur., §§ 951-963; 38 Ark. 428; 40 *Id.* 32; 85 *Id.* 369.

3. Positive fraud was proven.

4. There is no error in the master's report. He was not entitled to credit for permanent improvements. 47 Ark. 456; 55 *Id.* 369; 61 *Id.* 27; 70 *Id.* 483; 95 *Id.* 256. The betterment act only applies to *bona fide* holders. 53 Ark. 570; 59 *Id.* 144; 15 Cyc. 224-229.

SMITH, J., (after stating the facts). Notwithstanding the fiduciary relation between appellant and his wards, he still had the right to purchase their property. But this was not an absolute right to be exercised as one person might purchase from another. This question was discussed in the case of *Reeder* v. *Meredith*, 78 Ark. 111, where an administration was being had upon the estate of the administrator's father and the administrator bought the interest of his sister in the lands of the estate. Many authorities were reviewed and it was there said: ''The general rule, says Mr. Perry, is 'that the trustee shall not take beneficially by gift or purchase from the *cestui que trust;* the question is not whether or not there is fraud in fact, the law stamps the purchase by the trustees as fraudulent *per se,* to remove all temptation to collusion and prevent the necessity of intricate inquiries, in which evil would often escape detection, and the cost of which would be great. The law books only to the facts of the relation and the purchase. The trustee must not deal with the property for his own benefit.' 'But,' he continues, 'there are exceptions to the rule, and a trustee may buy from the *cestui que trust,* provided there is a distinct and clear contract, ascertained after a jealous and scrupulous examination of all the circumstances; that the *cestui que trust* intended the trustee to buy and there is a fair consideration and no fraud, no concealment, no advantage taken by the trustee of information acquired by him, in the character of trustee. The trustee must clear the transaction of every shadow of suspicion. * * * Any withholding of information, or ignorance of the facts, or of his rights on the part of the *cestui que trust,* or any inadequacy of price will make such purchaser a constructive trustee.' Perry on Trusts, § 195. This is the general doctrine announced by our own court and recognized by practically all the authorities.''

The court found that actual fraud was committed in procuring the deed and we can not say that this finding is against the clear preponderance of the evidence, and

especially is this true in view of the standard which the law sets up to govern the dealings between the trustee and the *cestui que trust*. Appellees testified that all of their business affairs were in the hands of appellant, who, as has been stated, was both their brother-in-law and guardian. They were only fifteen and seventeen years old respectively when the order removing their disabilities was made. The petition therefor stated the purposes for which it was asked, and recited the sale which it was proposed to make, and the court was in possession of these facts when the order was made; but this was an *ex parte* proceeding, and the court evidently heard only such evidence as appellant produced, for he appears to have been in charge of the proceedings and to have accompanied them to court, and immediately after securing the order had the appellees execute the deed to him, which had been previously prepared. There appears to have been no necessity on the part of appellees to have the sale for they were both at work and were earning salaries sufficient to support them, and it appears that they soon squandered the money paid them, as might have been expected. In fact, they were only paid half the money in cash at the time because as appellant said: "I will not pay you kids all the money now; you might spend it all and in a little while you would not have any." The lot had a street frontage of eighty-eight feet, and Kittleberger paid $2,800 for forty feet of it. Appellees were paid $400 each by appellant for their respective interests, and this was also the price appellant had paid the two adult brothers, whose interest he had purchased some time before acquiring the shares of appellees. But one brother sold after he had removed to California and the other brother sold his interest while he was in St. Louis with his sick wife, and at a time when he was in straitened circumstances.

Appellees never inquired concerning the value of the property, except Minnie asked a neighbor about it, who said it was worth $4,000, but when she told appellant and his wife what the neighbor had said, they told her she

should not pay any attention to him; that he was an old man, didn't know what he said and was drunk all the time. It is admitted that appellees were never advised that they had any special interest in the property because it was a homestead, but appellant excuses this failure by saying that he did not know it himself. Considering the relationship of the parties, we think he was chargeable with notice of that fact and was under the duty of communicating it to his wards before attempting to purchase their interest. 2 Pomeroy, Equity Juris., § 958.

Proof was taken as to the market value of the property and also as to its rental value, and, while this proof is conflicting, it is certain that appellant bought the property at considerably less than its value. The court therefore properly set aside the sale except as to the part conveyed Kittleberger, which appellees did not ask to have set aside. A master was appointed to state an account and was given directions in reference thereto, and he made a report in which he reported the amount due each of the appellees. This was done by charging each of them with the $400 received and the interest thereon. At the time of the sale to the appellant, three of the children were minors, one being a boy named Albert, who soon thereafter attained his majority. Each child was credited with a third of the rents during the minority of Albert, and thereafter these appellees were each credited with one-half the rents during the minority of Minnie Barnett, since which time all rents were credited to Maggie Smith, who is not yet twenty-one years of age.

No complaint is made of the court's directions to the master in stating the account, except in charging interest on the whole consideration received from Kittleberger instead of only two-fifths of it; but appellant says it was not stated, as the court directed it should be done, and he says: "The master evidently made his error in calculations by attempting to apportion instead of calculating each item separately. The judgment of the lower court should at least be reversed to the extent of correcting the master's calculations." Appellant has made ex-

tensive calculations on the various items of debit and credit which appear to be correct and to accord with the court's directions and the account as to rents and profits and repairs and taxes, with the various interest charges thereon will be restated in conformity with the calculations furnished by appellant. But he computes interest on only two-fifths of the consideration received from Kittleberger, whereas we think the appellees should have interest on the entire sum. They would have been entitled to all the rents on all the property had appellant not sold it, and it is equity that they should have interest on all the purchase money during the time when they would have been entitled to all the rents. Allowing Mrs. Barnett interest on her one-half the purchase money until she became of age would entitle her to recover on that account the sum of $168, and allowing Mrs. Smith all the interest thereafter would entitle her to recover on that account the sum of $392. This interest is calculated to June 26, 1913, the date of the master's report.

The accounts are restated as follows:

Mrs. Barnett should recover:

| | |
|---|---:|
| Rents and interest............................ | $ 341.15 |
| Purchase money and interest................. | 728.00 |
| | $1,069.15 |

She should be charged:

| | |
|---|---:|
| One-half taxes, etc............................ | $ 197.18 |
| Amount received for deed and interest........ | 514.00 |
| | $ 711.18 |
| Balance due Mrs. Barnett................ | $ 357.97 |

Maggie Smith's account should be restated as follows:

| | |
|---|---:|
| Rent and interest............................ | $ 541.15 |
| Purchase money and interest................. | 952.00 |
| | $1,493.15 |

She should be charged:

One-half taxes, interest, etc.................$  197.18

Amount received for deed and interest........    514.00

$  711.18

Balance due Mrs. Smith.................$  781.97

As thus modified, the decree will be affirmed, and the costs of this appeal will be divided equally between appellant and appellees.