## SCONYERS *v.* SCONYERS.

### Opinion delivered December 15, 1919.

1. GUARDIAN AND WARD — TRANSACTIONS BETWEEN. — Purchase of land by a guardian from his minor ward is a transaction which the law subjects to the closest scrutiny, and will be upheld only in case the guardian has exercised the utmost good faith.

2. GUARDIAN AND WARD—GOOD FAITH IN IN PURCHASE OF GUARDIAN FROM WARD.—Evidence that land purchased by a guardian from his minor ward was worth at least the purchase price and perhaps very much more, that the sale was made by the ward to procure an education, and that the guardian did not disclose to the ward that he owed him money, *held* not to show the necessary good faith required to uphold the transaction.

3. GUARDIAN AND WARD—SALE TO GUARDIAN—RATIFICATION.—A ward did not ratify a sale of real estate to his guardian by demanding payment of a purchase money note after the guardianship expired where he demanded payment without knowing his right to rescind and while the guardian's influence over him still continued.

4. GUARDIAN AND WARD — CONTINUANCE OF RELATION OF TRUST.— There is no presumption of law that the relation of trust and confidence between a guardian and ward terminates instanter when the ward comes of age or the guardianship closes, as when the ward's disabilities are removed.

Appeal from Jackson Chancery Court; *Lyman F. Reeder,* Chancellor; reversed.

*John W. Stayton* and *Samuel M. Casey,* for appellants.

A guardian can not buy his ward's land, and this case falls squarely within 54 Ark. 640; 96 *Id.* 573; 129 *Id.* 149. No case is cited by appellee to the contrary. 112 Ark. 141 is not in point. Pom. Eq. Jur. (3 Ed.), §

961. *Uberrima fides* is required, and the benefit to the guardian invalidates the deed or sale.

*Boyce & Mack,* for appellee.

1. The sale here was open, fair and honest, and the consideration was full, and *uberrima fides* was exercised, and there was no advantage taken in any way, and the sale was not even voidable. Black on Rescission and Cancellation, sec. 40; Pom. Eq. Jur. (4 Ed.), sec. 956; 39 Cyc. 371; 112 Ark. 141. See also 84 *Id.* 557; 78 *Id.* 111; 96 *Id.* 251.

2. The evidence shows conclusively that every act of appellee and every duty he owed his brother and ward will bear the most careful analysis and stand every test of the law as to good faith, fairness and honesty, and the chancellor so found. The price was adequate, and the judgment should be affirmed. *Supra.*

SMITH, J. Appellant and appellee are the sons of T. J. Sconyers, who died in the year 1905, owning at the time of his death a tract of land in Independence County, which was his homestead. In addition, he owned a tract of land containing two hundred acres in Jackson County. He was survived by six children and a widow, who was the stepmother of the children. In a manner not necessary to state here the Wolff-Goldman Realty Company of Newport acquired three of these shares in the year 1915. The other shares were owned by appellant, appellee and another brother named Oscar. Appellee had acquired the interest of the widow. Shortly before the transactions occurred out of which this litigation arose appellee bought the share of the Wolff-Goldman Realty Company and of his brother, Oscar, who had just come of age, thereby becoming the owner of the whole title to all the land except the undivided one-sixth interest owned by appellant. Appellant was born January 16, 1898, and was the youngest of the children.

On April 9, 1912, appellee was appointed guardian for appellant, and took charge of his interest in the above lands as well as the personal property in which he had

an interest. About May, 1916, appellant entered into a contract with appellee for the purchase of the undivided one-sixth interest which appellee did not then own, and as appellant was not of age an order was procured from the Independence Chancery Court on June 5, 1916, removing appellant's disability of nonage. It is shown that appellant employed the attorney who had charge of that proceeding; but it is reasonably certain that this action was taken at the suggestion of appellee. Appellee was finally discharged as guardian on October 18, 1916, one day after the execution and delivery of the deeds. On October 17, 1916, appellant executed to appellee two deeds, one of which conveyed the lands in Independence County for the recited consideration of $250, and the other conveyed the lands in Jackson County, the same being the lands in controversy, for the recited consideration of $1,250; and this suit was brought to set aside the conveyance of the Jackson County lands.

The complaint contains many allegations of fraud, among others one to the effect that appellant was told and believed that the two instruments which he executed were mortgages, and that the purpose of their execution was to enable him to procure money to pay his expenses at school. But, without setting out the testimony, it may be said that the testimony does not support that allegation, and the relief prayed can not be awarded on that account.

It is insisted, however, that the law denied appellee the right to purchase appellant's interest under any circumstances whatever; but that if such right did exist the testimony does not show that *uberrima fides* which must exist before the guardian can purchase the land of his ward. We think appellant is not correct in his first contention, but is correct in his second. The court below held with appellee on both contentions, and in support of the decree there pronounced it is here insisted that the court below correctly found the facts on the issue of undue influence; but that if that finding is not supported

by the testimony a subsequent ratification of the sale has been shown.

In support of the contention that appellee could not purchase appellant's interest in the land the cases of *Hindman* v. *O'Connor,* 54 Ark. 633, and *Haynes* v. *Montgomery,* 96 Ark. 573, and *Sorrels* v. *Childers,* 129 Ark. 149, and other cases are cited, in which the trustee had bought at a sale the title of the *cestui que trust,* all of which cases held that as a matter of public policy this could not be done. Those cases are not applicable here for the reason that the guardian has not acquired at some sale the title of the ward, but has acquired title from the ward. This last is a transaction which the law subjects to the closest scrutiny, and, having done so, permits to stand in the event only that the negotiation and consummation of the deal has been characterized by the utmost good faith on the part of the guardian. The test in such cases is stated in the case of *Waldstein* v. *Barnett,* 112 Ark. 141, in a quotation there copied from the case of *Reeder* v. *Meredith,* 78 Ark. 111, which had been taken from section 195 of Perry on Trusts, and which need not be restated here.

We think, however, that the testimony in this case does not meet that test. The testimony is conflicting as to the value of the land, but all the witnesses agree that it was worth at least as much as appellee paid for it at the time of the purchase, and a number of witnesses placed the value much higher. Several of the witnesses who testified that a fair price had been paid for the land also stated that their estimate of the value of the interest sold was based upon the rent derived from it. It was shown that appellee, in his settlement with appellant, charged himself with rent at $5.50 per acre, when he was in fact working the land on shares and receiving the equivalent of ten to twenty dollars per acre. Appellant was not advised of that fact, and appellee excuses his failure so to do by saying that he regarded himself as the tenant, and that he was charging himself with what he regarded as reasonable rent for the land.

Appellant desired to go to school, and sold the land to raise money for that purpose. Appellee had failed for nearly four years to file a settlement of his guardianship, and appellant did not know that any sum was due him by his guardian; and it is now insisted that no sum was due him; but, as we understand the testimony, there was in fact $147.85 due appellant at the time of the sale. This sum might not have been sufficient to defray appellant's expenses at school, but he was entitled to know that this sum was due him in reaching a decision as to whether or not he should sell his land.

Appellant had gone to school near Fort Smith, and was at school when this sale was made, and he accompanied his brother to Fort Smith for the purpose of acknowledging the deeds. At the time the deeds were delivered no money was paid and no notes for purchase money were given. A straight warranty deed was made, reciting the receipt in full of the consideration, and no lien was reserved in the deed or other security given. At the end of about a year a settlement between the brothers was had, in which no calculation of interest was made. Notes for the purchase money were not given until the fall of 1917, and these were not paid when due. An attorney was employed by appellant to collect the first of these notes to fall due; and it is said that this constituted a ratification of the sale. Another note has not yet been paid, although a tender of payment was made by appellee and refused by appellant. It is now said that when appellant demanded payment of the first note he did not know that he had any rights in the matter except to require payment of the notes, but that when he was advised that he could rescind he elected so to do and refused to receive payment of the unpaid note.

We think there has been no ratification, for appellant was not advised as to his rights when he demanded payment of the first note.

There is no presumption of law that the relation of trust and confidence terminates *instanter* when the ward comes of age or the guardianship closes. The contrary is

shown to be the law in the case of *Haynes* v. *Montgomery*, 96 Ark. 573, where this court quoted with approval from 1 Story on Equity (13 Ed.), sec. 317, the following statement of the law:

"\* \* \* It is obvious that during the existence of the guardianship the transactions of the guardian can not be binding on the ward if they are of any disadvantage to him; and indeed the relative situation of the parties imposes a general inability to deal with each other. But courts of equity proceed yet further in cases of this sort. They will not permit transactions between guardians and wards to stand, even when they have occurred after the minority has ceased and the relation become thereby actually ended, if the intermediate period be short, unless the circumstances demonstrate in the highest sense of the term the fullest deliberation on the part of the ward and the most abundant good faith (*uberrima fides*) on the part of the guardian. For in all such cases the relation is still considered as having an undue influence upon the mind of the ward, and as virtually subsisting, especially if all the duties attached to the situation have not ceased; and if the accounts between the parties have not been fully settled, or if the estate still remains in some sort under the control of the guardian." There was no ratification here for the additional reason that the influence of the guardian had not ceased, when the settlement was made; as is evidenced by appellant's failure to charge the interest then due. He was still under twenty-one years of age, although his disability of nonage had been removed, and the guardianship had closed.

The decree of the court below will, therefore, be reversed and the cause remanded with directions to set aside the deed to the Jackson County lands.