STOKES v. LANDREM.

Opinion delivered October 21, 1929.

*Holifield & Upton* and *Arthur Sneed,* for appellant.
*Ward & Ward,* for appellee.

KIRBY, J. This appeal is prosecuted from a decree in effect surcharging the account of appellant, F. M. Stokes, as guardian, and canceling a deed made to him by the commissioner under a decree of foreclosure against lands mortgaged by his former ward, Josie Landrem, to him, as guardian of her minor sister and brother, to secure a loan of money belonging to them in his hands as guardian.

It appears from the testimony that M. A. Palmer died intestate about the 6th day of December, 1908, leaving surviving him his widow and Josie Palmer Landrem, Rufus Palmer and Frank Palmer, his children by a former wife, and Elsie Palmer, his child by his surviving widow, who did not long survive her father, and no question is raised as to her interest here. Palmer owned and occupied a homestead consisting of about 63 acres, particularly described in the complaint, at the time of his death. Josie Palmer Landrem was born on the 10th day of September, 1893, and on the 25th day of May, 1908, F. M. Stokes was duly appointed guardian for her, Frank, Rufus and Elsie Palmer. Elsie Palmer died, and her guardian paid off her estate to her mother, Mollie Palmer. The widow lived upon the homestead until the 15th day of April, 1911, when she died, leaving surviving her Ardell Simpson, a son by a former marriage.

Josie Palmer married R. E. Landrem on the 10th day of December, 1909, and four children were born to them, and on the 18th day of July, 1911, appellant Stokes, as guardian for her, filed his final settlement, which was approved by the probate court on the 15th day of December, 1911, the amount found to be due the ward in the settlement being $195.03, which was paid to her by the guardian, who was discharged. She was 18 years old on the 10th day of September, 1911, and 21 years old on the 10th day of September, 1914, and was the owner of an undivided one-third interest in her deceased father's homestead. She, with her husband, R. E. Landrem, executed a mortgage on the 13th day of April, 1915, to F. M. Stokes, appellant, as guardian of Frank and Rufus Palmer, conveying her one-third interest in the homestead land to secure the payment of a $300 note given by her and R. E. Landrem to F. M. Stokes, as guardian, for money borrowed from the estate of said minors. She died on the 7th day of December, 1916, and on the 14th day of September, 1918, F. M. Stokes, as guardian of Frank and Rufus Palmer, brought suit to foreclose the mortgage given by her and her husband to secure the borrowed money. A decree of foreclosure was rendered, and on the 4th day of September, 1919, Stokes, guardian, filed suit in the chancery court against the heirs at law of Josie Landrem and R. E. Landrem, as guardian, to correct an error in the description of the land in the mortgage ordered foreclosed in the former suit. In the last suit constructive service was had, the two suits were consolidated, a guardian and attorney *ad litem* was appointed for the minor defendants, a decree was entered reforming the mortgage and ordering a sale of the property to pay the said indebtedness, and the lands were sold by the commissioner in chancery, and purchased by F. M. Stokes for $583.62, the sale being confirmed by the court and a deed executed to the lands. On the 20th day of August, 1924, R. E. Landrem, guardian for minor children of himself and Josie Landrem, de-

ceased, brought suit against F. M. Stokes and his son, Francis E. Stokes, to whom he had deeded the lands purchased at the foreclosure sale, for an accounting and for cancellation of the deed.

A master was appointed, an account stated, showing that, at the time of the execution of the mortgage by Josie Landrem and her husband to secure the sum of $300 borrowed from F. M. Stokes as guardian of her brothers, the said F. M. Stokes was in fact indebted to the said Josie Landrem in the sum of the amount of the money alleged to be loaned, and for security of which the mortgage was given. The court approved the master's findings, and, while he held there was no intentional fraud in any of the transactions on the part of the guardian, F. M. Stokes, it was also held that the relation had not been severed for a sufficiently long time to relieve his former ward against his influence, and that he stood to her in such a fiduciary relation, because of being in possession of the homestead lands of her father and her minor brothers, that he must account for her portion of the rent of the lands. A decree was rendered accordingly, and the deed executed to him under the mortgage foreclosure sale canceled, as was also his voluntary deed to his son, the other appellant, and from this decree the appeal comes.

Appellants insist that the decree is not supported by the testimony, and that the court erred in denying his plea of the statute of limitations against the claims of his former ward, Josie Landrem. It will suffice to say that the court, after a careful consideration of the entire record, is of opinion that the findings of the chancellor are not contrary to the preponderance of the testimony as to the principal facts, and as to the facts showing the trust relation, and warranting the denial of the plea of the statute of limitations under the doctrine announced in our cases of *Haynes* v. *Montgomery*, 96 Ark. 573, 132 S. W. 651; *Sconyers* v. *Sconyers*, 141 Ark. 256, 216 S. W. 1045; *Sorrells* v. *Childers*, 129 Ark. 149, 195 S. W. 1

L. R. A. 1917F, 430; *Oil Fields Corporation* v. *Dashko,* 173 Ark. 533, 294 S. W. 25, 17 R. C. L. 749.

Francis E. Stokes was not an innocent purchaser for value of the lands for which F. M. Stokes paid only $583.62 at the foreclosure sale, and which the testimony shows he had afterwards contracted to sell to his wards for something over three times the amount he paid therefor.

No error appearing in the record, the decree will be affirmed, and it is so ordered.