FLORENCE CAROLYN BALCH MONTGOMERY *v.* FIRST
NATIONAL BANK OF NEWPORT, ADM'R

5-4175

414 S. W. 2d 109

Opinion delivered April 17, 1967
[Rehearing denied May 22, 1967.]

*Ward & Mooney,* for appellant.

*Pickens, Pickens & Boyce,* for appellee.

GEORGE ROSE SMITH, Justice. This case went off below on demurrer, the chancellor holding that the plaintiff's complaint showed on its face that her asserted causes of action were barred by laches. This appeal is from the ensuing orders of dismissal.

The complaint names three defendants: The First National Bank of Newport, administrator of the estate of the plaintiff's father, Lucas G. Balch; American Employers Insurance Company, surety on her father's bond when he was serving as her guardian; and the Newport Federal Savings & Loan Association.

In substance the complaint asserts: The plaintiff was born on August 15, 1941. In 1951 she became entitled to $12,500 as the proceeds of an insurance policy upon the life of her brother. Her father was appointed by the probate court as her guardian, with the defendant American Employers as the surety on his bond. Balch, as guardian, collected and invested the insurance money. In October of 1959 he obtained an order of the probate court which recited that he had turned his daughter's property over to her when she attained her majority. The property then consisted of $2,900 in Government bonds, a savings account of $10,000 on deposit with the defendant Newport Federal, and a small bank account that does not appear to be in issue. The plaintiff's father, in obtaining the probate court order (and, presumably, in obtaining his discharge as guardian), presented what purported to be his daughter's receipt, acknowledging the delivery of her property.

That receipt, the complaint goes on to say, either was forged or was procured by fraud. None of the plaintiff's property was ever delivered to her. To the contrary, her father, during the rest of his life, assured her that he held at least $12,500 of her money, which he would account for in due time. It was not until after her father's death on November 21, 1965, that the plaintiff first learned that he had misappropriated the assets of the guardianship. The complaint sought judgments in appropriate amounts against Balch's estate, against the surety company, and against the savings and loan association.

Preliminarily we mention a procedural point. Two of the defendants filed answers merely denying the al-

legations of the complaint. The plaintiff then filed a motion for summary judgment, with a supporting affidavit. She now contends that the chancellor erred in permitting the defendants, while the motion for summary judgment was pending, to amend their pleadings by raising the issue of laches by demurrer.

This argument is without merit. In effect the appellant insists that the following language in the summary judgment statute freezes the state of the pleadings the moment a motion for summary judgment is filed: "The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ark. Stat. Ann. § 29-211 (Repl. 1962).

We are unwilling to say that the legislature, by referring merely to "the pleadings . . . on file," intended to prohibit the trial court from allowing the pleadings to be amended after a motion for summary judgment is filed. Rather, the summary judgment act must be read in harmony with our Civil Code, now almost a century old, which declares that the court may at any time, "in furtherance of justice," permit pleadings to be amended. Ark. Stat. Ann. § 27-1160. We are not persuaded that the summary judgment statute was meant to change our policy to one that would in substance be one in furtherance of injustice.

On the merits, the court was in error in sustaining the demurrers of the bank, as administrator of Balch's estate, and of the insurance company, as surety on the guardian's bond. In equity, limitations (and laches) may be raised by demurrer if the complaint shows the cause of action to be barred and fails to allege facts sufficient to remove the bar. *Mueller* v. *Light,* 92 Ark. 522, 123 S. W. 646, 31 L. R. A. (n.s.) 1013 (1909). But here the complaint, construed liberally on demurrer,

asserts two grounds for suspending the running of the statute: First, that Balch concealed his fraud (*Kurry* v. *Frost,* 204 Ark. 386, 162 S. W. 2d 48 [1942]), and, secondly, that as a guardian Balch was a fiduciary, so that limitations did not begin to run until there had been a repudiation of his trust. *State ex rel. Atty. Gen.* v. *Van Buren School Dist. No.* 42, 191 Ark. 1096, 89 S. W. 2d 605 (1936); *Sconyers* v. *Sconyers,* 141 Ark. 256, 216 S. W. 1045 (1919).

It might be argued that the guardian's surety, not having been an actual party to the fraud, is entitled to rely upon that section of the Probate Code which permits a probate court to set aside a guardian's settlement for fraud only if the petition is filed within three years after the guardian's discharge. Ark. Stat. Ann. § 57-645 (Supp. 1965). That section of the Code, applicable to guardians, parallels a similar section that applies to personal representatives. Section 62-2912. The Probate Code Committee's comment to the latter section suggests that the section was drafted to extend the power of the *probate court*—a power that had formerly been narrowly limited with respect to orders approving final settlements. See, e.g., *France* v. *Shockey,* 92 Ark. 41, 121 S. W. 1056 (1909). There is no indication that the Committee meant to curtail the long-recognized power of the *chancery court* over such settlements. Quite the opposite, the Committee's comment implies that the remedial powers of a court of equity are to continue. Hence the extension of the time within which a probate court may reopen a settlement does not aid the surety company in this suit in equity.

Upon the remaining aspect of the case the chancellor correctly sustained the demurrer of the savings and loan association. There is no allegation of any misconduct whatever on the part of that company. The only permissible inference from the meager facts asserted in the complaint is that the association may have allowed Balch to withdraw the deposit. A depository of trust funds, however, incurs no liability in permitting withdrawals

by the trustee unless in so doing it knowingly participates in a breach of trust. Restatement, Trusts (2d), § 324, and Ark. Annotations. The bare allegation that some of the ward's funds were formerly on deposit with the savings and loan association falls decidedly short of stating a cause of action against the association.

Affirmed in part, reversed in part, and remanded.

Harris, C. J. and Byrd, J., dissent.

CONLEY BYRD, Justice, dissenting. I dissent to so much of the majority opinion as holds that the statute of limitations, Ark. Stat. Ann. § 57-645 (Supp. 1965), has not run against the surety on the guardian's bond. Ark. Stat. Ann. § 57-645 provides as follows:

"Upon the guardian of an estate filing receipts or other evidence satisfactory to the court, showing that he has delivered to the persons entitled thereto all the property for which he is accountable as guardian, the court shall make an order discharging the guardian and his surety from further liability or accountability with respect to the guardianship. *The discharge so obtained shall operate as a release from the duties of his office which have not theretofore terminated and shall be final, except that upon a petition being filed within three years of the entry thereof, it may be set aside for fraud in the settlement of the accounts.*" (Emphasis supplied.)

Section 57-645, *supra*, is a portion of Act 140 of 1949, which was adopted subsequent to Amendment 24 to the Constitution of Arkansas.

With respect to the jurisdiction given probate courts, Amendment 24 provides as follows:

"In each county the Judge of the court having jurisdiction in matters of equity shall be judge of the court of probate, and *have such exclusive original jurisdiction* in matters relative to the probate of

wills, the estates of deceased persons, executors, administrators, guardians and persons of unsound mind and *their estates, as is now vested in courts of probate, or may be hereafter prescribed by law...*" (Emphasis supplied.)

Pursuant to Amendment 24, the jurisdiction given to the probate courts under § 4 (b) of Act 140 of 1949 (Ark. Stat. Ann. § 62-2004b [Supp. 1965]) is as follows:

"*The Probate Court shall have jurisdiction of the* administration, *settlement and distribution* of estates of decedents, the probate of wills, the persons and *estates of minors,* persons of unsound mind and their estates, the determination of heirship, adoption, *and* (*concurrent with jurisdiction of other courts*) *jurisdiction to restore lost wills and for the construction of wills when incident to the administration of an estate; and all such other matters as are now or may hereafter be by law provided.* The judge of the Probate Court shall try all issues of law and of fact arising in causes or proceedings within the jurisdiction of said court and therein pending. *The court shall have the same powers to execute its jurisdiction* and to carry out its orders and judgments, including the award of costs *as now exist in courts of general jurisdiction*; and the same presumptions shall exist as to the validity of its orders and judgments as of the orders and judgments of courts of general jurisdiction." (Emphasis supplied.)

Therefore under the majority opinion the probate court's jurisdiction in matters involving estates of minors is not coextensive with that of courts of other competent jurisdiction. Since to me it is obvious that the committee that drafted the Probate Code was intending by § 4 (b) to give the probate court jurisdiction coextensive with other courts, I can not read the three-year statute of limitations as being applicable only to the probate courts, nor interpret the law as intending to give

other courts any greater jurisdiction than that given to probate courts.

Section 4 (b) of the Probate Code appears to have actually given the probate court exclusive jurisdiction of matters involving the settlement and disposition of estates of minors. It is not only subject to that interpretation but the committee comment is as follows:

"The foregoing section follows each enumeration of jurisdictional functions granted in Amendment No. 24 and adds determination of heirship, adoption, AND CONCURRENT JURISDICTION TO CONSTRUE WILLS, AND ESTABLISH LOST WILLS. Adoption is covered by existing statutes and is not embraced in this code. THE DETERMINATION OF HEIRSHIP AND THE RIGHT TO CONSTRUE WILLS AND ESTABLISH LOST WILLS CONCURRENTLY ARE ADDITIONS TO THE GENERAL GRANT OF JURISDICTIONAL CONTROL OVER ESTATES OF DECEDENTS AND PROBATE OF WILLS PURSUANT TO THE AUTHORITY CONTAINED IN AMENDMENT NO. 24 . . . " (Emphasis supplied.)

However, here the parties have not briefed the issue and I do not raise it on my own except as it affects the interpretation of the three-year statute of limitations set out in Ark. Stat. Ann. § 57-645.

Thus it is seen that the legislature was attempting to give the probate court either exclusive jurisdiction of the estates of minors, in accordance with Amendment 24, or at least concurrent jurisdiction coextensive with courts of general jurisdiction, and for purposes of this opinion under either theory the majority opinion disregards this intent on the part of the legislature in enacting Act 140 and on the part of the people in enacting Amendment 24. It is my view that § 57-645, being the three-year statute of limitations, is here applicable to the surety, since there is no allegation which would toll the statute as to it. Of

course, under the allegation of the promises made by the father during his lifetime, the statute would be tolled as to him or his personal representative, and because of the confidential relationship between the father and the daughter, outside of his legal status as guardian, the chancery court would certainly have jurisdiction to require an accounting of monies received in such fiduciary capacity.

To follow the view of the majority will put all bondsmen of guardians and personal representatives in a position of requiring the actual service of notice in each instance, rather than permitting the expeditious procedure used by many lawyers of submitting a waiver of notice and hearing as is suggested in Ark. Stat. Ann. § 62-2902 (Supp. 1965). In fact, the committee comment under § 62-2902 provides:

> "The committee feels that the order of final distribution should completely bar all persons who may have a right to object to any of the proceedings as to any matter which might be the basis of their objections. It does not bar third persons who would have no right to intervene in the proceedings or to object to the order."

For these reasons, I would affirm as to the guardian's bondsman.

HARRIS, C. J., joins in dissent.